IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ULX PARTNERS, LLC and
UNITEDLEX CORPORATION,
      Movant,

    v.                                           Civil No. 3:21cv77 (DJN)

LYNN L. TAVENNER,
Chapter 7 Trustee,
      Respondent.

**MEMORANDUM OPINION**

This case arises out of an adversary proceeding (the "Adversary Proceeding") filed by

Lynn L. Tavenner (the "Trustee"), in her capacity as the Chapter 7 trustee for the bankruptcy

estate of LeClairRyan PLLC ("LeClairRyan" or "Debtor"), against Defendants ULX Partners,

LLC ("ULXP") and UnitedLex Corporation ("UnitedLex") (collectively, "Defendants"). The

Adversary Proceedings arises out of a failed joint venture between LeClairRyan and Defendants.

Defendants now seeks to withdraw the reference to the United States Bankruptcy Court for the

Eastern District of Virginia (the "Bankruptcy Court") and have this Court conduct all of the

proceedings in the Adversarial Proceeding. Specifically, this matter comes before the Court on

Defendants' Motion to Withdraw the Reference and Memorandum in Support Thereof ("Def.'s

Mot." (ECF No. 2) at 12), filed on January 11, 2021. Following this Court's referral of the

Motion to United States Bankruptcy Judge Kevin R. Huennekens for proposed findings of fact

and conclusions of law (ECF No. 4), Judge Huennekens recommended that this Court deny

Defendants' Motion. (Prop. Findings of Fact and Concl. of Law ("Bankr.'s Rec.") (ECF No. 5-

11) at 17.) Defendants objected to the Bankruptcy Court's recommendation (Def.'s Obj. to

Bankr. Court's Prop. Findings of Fact and Concl. of Law ("Def.'s Obj.") (ECF No. 5)), and the Trustee responded to Defendants' Objections (Trustee Resp. to Def.'s Obj. to the Bankr. Court's Prop. Findings of Fact and Concl. of Law ("Trustee's Resp.") (ECF No. 5-12).)  The Court held a hearing on Defendants' Motion on May 28, 2021 (the "Hearing").  For the reasons stated on the record during the hearing and the reasons stated below, Defendants' Motion will be DENIED.

## I.     BACKGROUND

### A.     The Underlying Bankruptcy Case

On September 3, 2019, LeClairRyan, a national law firm headquartered in Richmond, Virginia, commenced the underlying bankruptcy case, *In re LeClairRyan PLLC*, No. 19-34574-KRH (Bankr. E.D. Va.) (the "Bankruptcy Case") by filing a voluntary petition under Chapter 11 of Title 11 of the United States Bankruptcy Code in the Bankruptcy Court.  (Bankr. ECF No. 1.) On October 3, 2019, the Bankruptcy Court converted the Bankruptcy Case to one under Chapter 7 of the Bankruptcy Code and appointed the Trustee.  (Bankr. ECF No. 140.)  As part of the appointment, the Bankruptcy Court authorized the Trustee to operate certain aspects of LeClairRyan's business, pursuant to the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.  (Bankr. ECF No. 155.)

On December 12, 2019, ULXP filed two proofs of claim in the Bankruptcy Case, indicating that LeClair Ryan owed it money at the time that it filed for bankruptcy.  Claim No. 174 seeks repayment from the estate for an outstanding balance of $8,563,288 owed on a "deferred loan promissory note."  (ECF No. 1-1.)  ULXP stated that the claim is secured by a "[s]econd lien on substantially all assets of Debtor."  (ECF No. 1-1.)  Claim No. 175 seeks payment of $3,952,025 from the estates for amounts due for "services provided to Debtor prior

to July 31, 2019." (ECF No. 1-3.) ULXP did not state that it had secured this claim with a lien. (ECF No. 1-3.) To date, UnitedLex has not filed a proof of claim in the Bankruptcy Case, but "has been paid in the ordinary course of administrative expenses incurred in connection with the postpetition operation of the Debtor's business under section 503(a) of the Bankruptcy Code." (Bankr. Rec. at 3.) Specifically, UnitedLex provided personnel to assist the wind-down operations and received compensation for those individuals' services from the bankruptcy estate. (Bankr. Rec. at 3, n.6.)

## B.    The Adversary Proceeding

On October 26, 2020, the Trustee filed a Complaint (ECF No. 1-6) against Defendants, thereby initiating the Adversary Proceeding, *Tavenner v. ULX Partners, et al.*, Adversary Proceeding No. 20-3142-KRH (Bankr. E.D.Va.). The allegations in the Complaint arise from Defendants' pre-petition business dealings with LeClairRyan. According to the Complaint, LeClairRyan experienced significant financial difficulties that led it to begin negotiating a potential joint venture with UnitedLex. (Compl. ¶ 1.) UnitedLex provides various legal and non-legal support services to law firms and legal departments. (Compl. ¶ 26.) This joint venture had the purpose of infusing LeClairRyan with liquidity and resolving the firm's financial problems. (Compl. ¶ 1.) The joint venture resulted in the creation of ULXP, with UnitedLex owning 99% of ULXP and LeClairRyan owning 1%. (Compl. ¶ 19.) Ultimately, UnitedLex contributed no new money to LeClairRyan as part of the transaction. (Compl. ¶ 76.) LeClairRyan was to contribute all of its non-legal intellectual property as well as back office and other non-legal staff to ULXP. (Compl. ¶ 34.)

On April 4, 2018, LeClairRyan entered into a master services agreement (the "MSA") with ULXP, "pursuant to which ULXP would provide business operations, client acquisition,

3

marketing, project management, financial planning, and other services to the Debtor in exchange for fees based, at least in part, on the revenue generated by the Debtor's firm." (Bankr. Rec. at 5 (citing Compl. ¶¶ 78-88)). The Trustee alleges that the structure of the joint venture and the dominion and control that Defendants exerted over LeClairRyan "bestowed insider status on the ULX Entities vis-à-vis the Debtor." (Compl. ¶¶ 2, 195.) In exercising this control over LeClairRyan, Defendants required the firm to inappropriately misuse funds tendered by clients for specific costs and expenses, using them instead for Defendant's own expenses. (Compl. ¶¶ 5, 92.) Essentially, the Trustee alleges that Defendants took control over LeClairRyan to improperly divert funds away from the firm and its creditors and to Defendants.

Additionally, as part of the process of forming the joint venture, LeClairRyan converted from a professional corporation to a professional limited liability corporation on March 31, 2018. (Compl. ¶ 95.) This conversion led to significant transfers to shareholders and an IRS audit of LeClairRyan's tax returns, which itself resulted in the IRS filing a proof of claim in the Bankruptcy Case in the estimated amount of $4,759,175.17. (Compl. ¶¶ 94-101.)

By the end of 2018, the Trustee alleges that LeClairRyan owed Defendants fees totaling more than $12 million. In April of 2019, LeClairRyan executed a promissory note for $8 million in favor of ULXP (the "ULXP Note") and an accompanying security agreement (the "ULXP Note Transfer"), with both documents backdated for December 20, 2018. (Compl. ¶¶ 132-33.) Throughout the terms of the dealing, Defendants knew that LeClairRyan was insolvent and exercised inappropriate control over the law firm to divert funds away from LeClairRyan's creditors for their own benefit. (Compl. ¶¶ 110-29, 137-68.) The Trustee alleges that LeClairRyan transferred not less than $19,357,282.51 to ULXP between August 1, 2018, and the date that LeClairRyan filed the bankruptcy petition. (Compl. ¶ 189.)

4

Based on these factual allegations, the Trustee asserts the following fourteen claims against Defendants in the Complaint:

- Count I asserts a claim against ULXP and UnitedLex for Avoidance of Fraudulent Transfers under § 548(a)(1)(A), seeking to recover $19,357,282.51 for the estate from Defendants;

- Count II asserts a claim against ULXP and UnitedLex for Avoidance of Fraudulent Transfers under § 548(a)(1)(B), seeking to recover $19,425,405.51 for the estate from Defendants;

- Count III asserts a claim against ULXP and UnitedLex for Avoidance of Fraudulent Transfers under §§ 544(b) and 550 and applicable state law, seeking to recover $19,425,405.51 for the estate from Defendants;

- Count IV asserts a claim against ULXP and UnitedLex for Avoidance of Preferences under § 547(b), seeking to recover $17,425,405.50 for the estate from Defendants;

- Count V asserts a claim against ULXP for Avoidance of Lien and Recovery of Avoided Transactions under § 550(a), seeking to avoid the $8 million ULXP Note and accompanying security interest;

- Count VI asserts a claim against ULXP for Avoidance of Fraudulent Transfer under §§ 544(b) and 550 and applicable state law, seeking to avoid the ULXP Note Transfer;

- Count VII asserts a claim against ULXP and UnitedLex for Disallowance of Claims under § 502(d), seeking to disallow all current and future claims that Defendants assert against the estate;

- Count VIII asserts a claim against ULXP for Re-Characterization of Debt as Equity, asking the Court to recharacterize the $8 million ULXP Note as equity;

- Count IX asserts a claim of Aiding and Abetting Breach of Fiduciary Duty against ULXP and UnitedLex, seeking to recover damages of $42,759,900 from Defendants;

- Count X asserts a claim against ULXP and UnitedLex for Statutory Conspiracy under Va. Code § 18.2-499, *et seq.*, seeking to recover three times the amount of damages to the estate, which it claims totals not less than $42,759,900;

- Count XI asserts a claim for Common Law Conspiracy against ULXP and UnitedLex, seeking to recover damages of $42,759,900 from Defendants;

- Count XII asserts a claim for Conversion against ULXP and UnitedLex, seeking to recover $1,0659,510 that had been tendered by LeClairRyan's clients but misappropriated by Defendants;

5

- Count XIII asserts a claim for Unjust Enrichment against ULXP and UnitedLex, seeking to recover $1,0659,510 that had been tendered by LeClairRyan's clients but misappropriated by Defendants;

- Count XIV asserts a claim for Alter Ego Liability against UnitedLex, asserting that all monies that ULXP must return to the estate should be enforced against UnitedLex, because UnitedLex formed ULXP as a sham to disguise its wrongful conduct.

For each count that the Trustee asserts against both Defendants, she asserts liability against UnitedLex "as an alter ego of ULXP."

In addition to the Adversary Proceeding discussed above, other disputes between the Trustee and Defendants have arisen in the Bankruptcy Case. On October 2, 2020, the Trustee filed the Trustee's Supplemental Motion for Use of Cash Collateral and Grant of Adequate Protection Related Thereto, if Appropriate, and Memorandum in Support Thereof (the "Cash Collateral Motion" (Bankr. ECF No. 645)), seeking to use cash collateral without providing adequate protection to ULXP, because the liens held by ULXP were avoidable under the Bankruptcy Code. On October 16, 2020, ULXP objected to the Cash Collateral Motion, claiming that it had valid liens under the ULXP Note Transfer. On October 29 and 30, 2020, the Bankruptcy Court conducted an evidentiary hearing on the Cash Collateral Motion. During the evidentiary hearing, the Bankruptcy Court received testimony and evidence from the parties addressing the validity of ULXP's lien. The Court granted the Cash Collateral Motion, finding that "ULXP had failed to establish that it held an allowed secured claim against the Debtor that required adequate protection beyond that for which it had already been provided." (Bankr. Rec. at 7.)

The Bankruptcy Court has scheduled the trial in the Adversary Proceeding to occur on September 14-24, 2021. (ECF No. 2 at 7.)

## C.     Defendants' Motion to Withdraw the Reference

On January 11, 2021, Defendants filed their Motion to Withdraw (ECF No. 2 at 12), asking this Court to withdraw from the Bankruptcy Court the reference of the claims brought

against them by the Trustee.  Defendants argue that many of the claims brought by the Trustee constitute "non-core" state law claims, thus depriving the Bankruptcy Court of the authority to enter final judgments on those claims.  (Def.'s Mot. at 9-10.)  Specifically, Defendants claim that Counts 3, 6, 9, 10, 11, 12, 13 and 14 constitute "non-core" claims, because they do not stem from bankruptcy and, instead, stem from independent state law causes of action that the Trustee could have pursued in another court.  (Def.'s Mot. at 11-12.)  Defendants also claimed that judicial economy weighed in favor of withdrawal of the reference and, relatedly, the uniform administration of the Bankruptcy Case did not weigh against withdrawal.  (Def.'s Mot. at 13.) Additionally, Defendants claimed that withdrawal would preserve its right to a jury trial on the claims for damages that the Trustee asserts against them.  (Def.'s Mot. at 15.)  However, Defendants argue that the Bankruptcy Court lacks authority to conduct a jury trial over the Adversary Proceeding absent consent by the parties, and Defendants have not given that consent. (Def.'s Mot. at 15.)  On January 25, 2021, the Trustee responded in opposition to Defendants' Motion to Withdraw ("Trustee's Opp." (ECF No. 2 at 41-79), and Defendants filed a reply ("Def.'s Reply" (ECF No. 2 at 136-60)) on February 8, 2021.  On February 18, 2021, the Court referred this matter to Judge Huennekens for a recommendation and proposed findings of fact and conclusions of law.  (ECF No. 4.)

**D.     The Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law**

On March 31, 2021, the Bankruptcy Court entered its Proposed Findings of Fact and Conclusions of Law (ECF No. 5-11), recommending that the Court deny Defendants' Motion to Withdraw.  Specifically, the Bankruptcy Court found that all of the claims asserted by the Trustee constitute core claims.  First, Counts I through VI "are inextricably intertwined" with the Proofs of Claims filed by ULXP, thereby rendering them core claims.  (Bankr. Rec. at 10-11.)

7

Next, Counts VII and VIII, seeking disallowance of ULXP's Proofs of Claim, arise directly from the Bankruptcy Code, rendering them core. (Bankr. Rec. at 11.) Finally, the Bankruptcy Court found that Counts IX through XIV "allege theories of liability that, while based on non-bankruptcy law, directly concern the legality of dealings between the Debtor and the Defendants with respect to the Joint Venture." (Bankr. Rec. at 11.) Thus, according to the Bankruptcy Court, the "most important" factor — whether the claims constitute core claims — weighs in favor of denying the Motion to Withdraw.

The Bankruptcy Court found that the other factors likewise weighed in favor of denying Defendants' Motion. For instance, the Bankruptcy Court has become "acutely aware of and familiar with Debtor's business, including the transactions at issue," having presided over the Bankruptcy Case for over a year with the relationship between Debtor and Defendants having "been front and center since the first day of the Bankruptcy Case." (Bankr. Rec. at 12.) The Bankruptcy Court also cited the evidentiary hearing as support for its familiarity with the case. (Bankr. Rec. at 12.) Likewise, the Bankruptcy Court noted that it has adopted procedures to streamline the litigation and facilitate settlement efforts of the Adversary Proceeding and the similar adversary proceedings that the Trustee anticipates filing. (Bankr. Rec. at 13.) These streamlined procedures will "encourage an efficient claims resolution process both by and against the bankruptcy estate." (Bankr. Rec. at 13.) Accordingly, leaving the reference intact would "further the uniform administration of bankruptcy proceedings, expedite the bankruptcy process, promote judicial economy, and ensure efficient use of the Debtor's and creditors' resources." (Bankr. Rec. at 13-14.) Additionally, forum shopping counseled against withdrawing the reference, as the Court had already ruled against Defendants in granting the Cash Collateral Motion. (Bankr. Rec. at 14.) Finally, the Bankruptcy Court rejected

8

Defendants' argument that they have a constitutional right to a jury trial on many of the claims at issue. (Bankr. Rec. at 14-15.) The Bankruptcy Court found that ULXP had subjected itself to the "bankruptcy court's equitable power" by filing two proofs of claim against the bankruptcy estate. (Bankr. Rec. at 15 (citing *Off. Comm. Of Unsecured Creditors v. Schwartzman (In re Stansbury Poplar Place, Inc.)*, 13 F.3d 122, 125-26 (4th Cir. 1993)).) With respect to UnitedLex, the Bankruptcy Court found that it had also submitted itself to the equitable jurisdiction of the Bankruptcy Court by "participat[ing] extensively in the administration of the Bankruptcy Cases and [having] been paid administrative expenses under section 503 of the Bankruptcy Code." (Bankr. Rec. at 15.) Thus, the right to a jury trial, if any, does not weigh in favor of withdrawing the reference. (Bankr. Rec. at 15.) In addition to the factors listed above, the Bankruptcy Court noted that a jury trial in the District Court could be delayed for over a year due to COVID-19, which would "hold up resolution of the entire Bankruptcy Case, delaying payment to creditors, preventing wind-down of the business operations, and burdening the estate with additional administrative expense." (Bankr. Rec. at 16.) Therefore, the Bankruptcy Court recommended that this Court deny the Motion to Withdraw. (Bankr. Rec. at 17.)

## E.    Defendants' Objections

On April 14, 2021, Defendants filed their Objection to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law. (ECF No. 5.) In arguing for withdrawal of the reference, Defendants largely rely on the same legal arguments that they advanced in their Motion for Withdrawal. Specifically, Defendants argue (1) that the state law claims constitute non-core claims (Def.'s Obj. at 8-14); (2) that they have a right to a jury trial on the state law claims (Def.'s Obj. at 14-19); (3) that the uniform administration of bankruptcy proceedings and judicial economy favor withdrawal (Def.'s Obj. at 20-21); and, (4) that they did not engage in

9

forum shopping (Def.'s Obj. at 21-22).

In addition to advancing these arguments in support of withdrawal, Defendants lodge the following nine specific objections to the Bankruptcy Court's Recommendations:

- <u>Objection 1</u>: Defendants object to the Bankruptcy Court's proposed finding that UnitedLex has assisted in the winding down of LeClairRyan's business and has been paid in the ordinary course for administrative expenses. (Def.'s Obj. at 2-3.) Instead, Defendants argue that only ULXP has assisted in the winding down and only ULXP has received payment for administrative or other expenses. (Def.'s Obj. at 3.)

- <u>Objections 2 and 3</u>: Defendants object to the Bankruptcy Court's listing of terms included in proposals for the joint venture that ultimately did not become part of the consummated deal. (Def.'s Obj. at 4.)

- <u>Objection 4</u>: Defendants object to the Bankruptcy Court's characterization of the conversion of LeClairRyan from a professional corporation to a professional limited liability corporation as occurring "in furtherance of the joint venture." (Def.'s Obj. at 4.) Instead, Defendants claim that conversion occurred independent of the joint venture. (Def.'s Obj. at 4-5.)

- <u>Objection 5</u>: Defendants object to the Bankruptcy Court referencing that LeClairRyan owed "Defendants" fees, because they claim that LeClairRyan only owed fees to ULXP. (Def.'s Obj. at 5.)

- <u>Objection 6</u>: Defendants object to the Bankruptcy Court referring to the Cash Collateral Motion as a dispute between the Trustee and "Defendants," because only ULXP filed an objection to the Cash Collateral Motion. (Def.'s Obj. at 6.) Defendants minimize the extent to which the Bankruptcy Court could have gained any insight into the dispute through the resolution of the Cash Collateral Motion. (Def.'s Obj. at 6.)

- <u>Objection 7</u>: Defendants object to the Bankruptcy Court's statement that "Defendants' relationship to the Debtor has been front and center since the first day of the Bankruptcy Case." (Def.'s Obj. at 7.) Instead, Defendants claim that "UnitedLex has not been substantively involved in the Bankruptcy Case, other than monitoring events." (Def.'s Obj. at 7.)

- <u>Objection 8</u>: Defendants object to the Bankruptcy Court stating that Counts I through VI seek recovery of assets transferred to UnitedLex and ULXP. (Def.'s Obj. at 7.) As with many of the other objections, Defendants claim that LeClairRyan only transferred the assets to ULXP, not UnitedLex. (Def.'s Obj. at 7.)

- <u>Objection 9</u>: Defendants object to the Bankruptcy Court's finding that all of the Trustee's claims constitute core proceedings. (Def.'s Obj. at 7.) Instead, Defendant argues that Counts III, VI, IX, X, XI, XII, XIII and XIV do not constitute core proceedings subject to final resolution by the Bankruptcy Court.

On April 28, 2021, the Trustee filed her Response to Defendants' Objection to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law.  (ECF No. 5-12.)  On May 28, 2021, the Court held a hearing on Defendant's Motion.  This matter is now ripe for review.

## II.    STANDARD OF REVIEW

Federal Bankruptcy Rule 9033(d) sets forth the standard for this Court to apply when reviewing objections to a Bankruptcy Court's proposed findings of fact and conclusions of law: "The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule.  The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." Fed. R. Bankr. P. 9033(d). Although Defendants object to certain specific factual findings, Defendants' Objections boil down to two main legal arguments:  (1) that the Bankruptcy Court erred in its application of several of the factors that guide the review of a motion to withdraw; and (2) that the Bankruptcy Court erred in referring to the "Defendants" collectively, when Defendants argue that the Trustee's allegations only implicate actions by ULXP.  Accordingly, the Court will conduct a de novo review of the objected-to factors governing withdrawal motions as well as whether those factors apply equally to UnitedLex.

## III.    ANALYSIS

Federal district courts exercise "original and exclusive jurisdiction of all cases" under the Bankruptcy Code.  28 U.S.C. § 1334(a).  District courts may refer all bankruptcy matters to bankruptcy judges, which this District has done as a matter of course since 1984.  28 U.S.C.

§ 157(a); *see In the Matter of: The Administration of the Bankruptcy Courts and Reference of Bankruptcy Cases and Proceedings to the Bankruptcy Judges of this District* (E.D. Va. Aug. 15, 1984) (Standing Order referring all bankruptcy matters to Bankruptcy Court). However, district courts may, and sometimes must, withdraw the reference of such proceedings in whole or part. 28 U.S.C. § 157(d). "Bankruptcy law provides two avenues by which a district court can order a case withdrawn from the bankruptcy court: mandatory withdrawal or permissive withdrawal." *Shaia v. Malone*, 2017 WL 4203544, at *3 (E.D. Va. Sept. 21, 2017) (citing 28 U.S.C. § 157(d)). The district court <u>must</u> withdraw the reference when "resolution of the proceedings requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). Alternatively, the district court <u>may</u> withdraw the reference for "cause shown." *Id.* A party seeking an order from the district court withdrawing a matter filed in an underlying bankruptcy action may file a motion to withdraw the reference, as Defendants have filed here. The movant bears the burden of demonstrating the appropriateness of withdrawal — whether mandatory or discretionary. *In re U.S. Airways Grp., Inc.*, 296 B.R. 673, 677 (E.D. Va. 2003). Defendants do not suggest that mandatory withdrawal applies here and, instead, urge the Court to exercise its discretion to withdraw the reference. (*See* Def.'s Mot. at 7 (citing only the standard for discretionary withdrawal).)

Bankruptcy law allows for discretionary withdrawal "for cause shown," but does not define "cause." 28 U.S.C. § 157(d). Courts in this district weigh six factors in determining whether the movant has established cause for withdrawing reference. *U.S. Airways*, 296 B.R. at 681.

> These factors include: (i) whether the proceeding is core or non-core, (ii) the uniform administration of bankruptcy proceedings, (iii) expediting the bankruptcy

12

> process and promoting judicial economy, (iv) the efficient use of debtors' and creditors' resources, (v) the reduction of forum shopping, and (vi) the preservation of a right to a jury trial.

*Id.*; *see also Chesapeake Trust v. Chesapeake Bay Enters., Inc.*, 2014 WL 202028, at *4 (E.D. Va. Jan. 17, 2014) (assessing same factors). Although some courts place great weight on the core/non-core factor, "[t]he better view is that discretionary withdrawal references should be determined on a case-by-case basis by weighing all the factors presented in a particular case, including the core/non-core distinction." *Shaia*, 2017 WL 4203544, at *4 (internal quotations omitted). If the district court determines that the balance of factors indicate that the interests of justice and judicial economy favor litigation in the district court, the district court should exercise its discretionary power of withdrawal. *Chesapeake Trust*, 2014 WL 202028, at *4 (citing *In re QSM LLC*, 453 B.R. 807, 809-10 (E.D. Va. 2011)). The Court will address each factor in turn.

### A.     The Core/Non-Core Factor Does Not Weigh In Favor Of Withdrawal.

The Bankruptcy Court found that all of the claims at issue present core issues, a finding that the Trustee supports. Defendants object to this finding, arguing that the state law claims — Counts IX through XIV — constitute non-core claims. The Court agrees with the Bankruptcy Court's finding.

When a case gets referred to a bankruptcy court, "the manner in which a bankruptcy judge may act . . . depends on the type of proceeding involved." *Stern v. Marshall*, 564 U.S. 462, 473 (2011). "Congress has divided bankruptcy proceedings into three categories: (1) those that arise under title 11, (2) those that arise in a title 11 case, and (3) those that are related to a case under title 11." *Chesapeake Trust*, 2014 WL 202028, at *2 (citing *Stern*, 564 U.S. at 473). The first two categories constitute "core proceedings" such that a bankruptcy judge "may hear and enter final judgments." *Stern*, 564 U.S. at 474. With respect to non-core proceedings, a

bankruptcy judge "may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," but, unless the parties consent, the bankruptcy judge cannot enter final judgments and instead must submit "proposed findings of fact and conclusions of law to the district court." 28 U.S.C. § 157(c)(1). Section 157 sets forth a non-exhaustive list of examples of core proceedings. The list includes, for example, "the allowance or disallowance of claims against the estate," and counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2)(B)-(C). "The breadth of matters encompassed by these examples suggests, and courts construing the amended statute have confirmed, that Congress intended that 'core' proceedings' would be interpreted broadly, close to or congruent with constitutional limits . . . ." *Shaia*, 2017 WL 4203544, at *4 (quoting *C.F. Trust, Inc. v. Tyler*, 318 B.R. 795, 803 (E.D. Va. 2004)).

In determining the core or non-core nature of a proceeding, a "[c]ourt identif[ies] the nature of the cause of action itself, and whether the action invokes a right under title 11 or that arose in a case under title 11." *Chesapeake Trust*, 2014 WL 202028, at *3. The statute dictates that a proceeding does not become a non-core proceeding "solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). "A cause of action is constitutionally core when it 'stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.'" *Allied Title Lending, LLC v. Taylor*, 420 F. Supp. 3d 436, 448 (E.D. Va. 2019) (quoting *Stern*, 564 U.S. at 499). A bankruptcy estate's claim against a creditor "would necessarily be resolved in the claims allowance process when it shares common questions of fact and law with the creditor's claims and when it seeks to directly reduce or recoup the amount claimed." *Id.* (internal quotations omitted). Conversely, claims by the bankruptcy estate that seek to "augment the estate" but do not "directly modify the amount claimed" do not qualify as a

14

"claim to be resolved in ruling on the proof of claim." *Id.*

Here, the Court finds that the state law claims in the Trustee's complaint constitute core claims. Although the claims arise under state law, rather than bankruptcy law, they directly concern the dealings between LeClairRyan and Defendants that underpin the joint venture. Those precise dealings will play a key role in the bankruptcy case, including with respect to resolving ULXP's claims. In its proof of claim, ULXP asserts a right to money in the estate based on transactions that occurred between LeClairRyan and ULXP (and UnitedLex as ULXP's alter ego) in creating and operating the joint venture. Similarly, the Trustee alleges that these same transactions occurring between LeClairRyan and ULXP (and UnitedLex as ULXP's alter ego), constituted fraud and violated various state and common laws. These allegations go to the heart of the validity of the joint venture itself and the agreements and transactions forming the joint venture, such that the Bankruptcy Court could not resolve ULXP's claims without reaching a determination as to the validity of the agreements and the joint venture. The Trustee's claims "share[] common questions of fact and law" with ULXP's claims and would directly reduce the amount of ULXP's claims. The claims here do not simply "augment the estate" — they also "directly modify the amount claimed" by ULXP. Simply put, the state law claims and ULXP's proof of claims cannot independently co-exist. A finding for or against a party in one necessarily hurts that party's position in the other — rendering them "inextricably intertwined." Thus, Counts IX through XIV constitute "core" proceedings.[1]

Defendants' reliance on *In re Systems Engineering & Energy Management Associates,*

---

[1] Defendants object in a footnote to the Bankruptcy Judge's finding that Counts III and VI constitute "core" claims. However, the Trustee brings these claims under Sections 544(b) and 550 of the Bankruptcy Code and they are inextricably intertwined with the core claims, rendering them core. To the extent that Defendants challenge the finding only with respect to UnitedLex, that argument fails due to the assertion of the alter ego claim, as discussed below.

*Inc.* (Def.'s Obj. at 9-10.) misses the mark.  There, the bankruptcy court found state law claims

for breach of fiduciary duty non-core and business conspiracy to be non-core.  252 B.R. 635, 644

(Bankr. E.D. Va. 2000).  It made this finding based largely on the fact that "the bankruptcy

case's filing does not significantly affect the parties' rights" and, similarly, that the "bankruptcy

case pendency does not affect the action."  *Id.* at 648.  There, the disconnect between the

bankruptcy case and the adversary action existed at least in part due to the fact that the

defendants in the adversary action had not filed proofs of claim in the bankruptcy action.

Because of that, the bankruptcy court analyzed cases with claims against "strangers to the

bankruptcy proceeding."  *Id.* at 641.  But, ULXP and its alleged alter ego United Lex are

anything but strangers to the litigation.  ULXP has filed a proof of claim.  Likewise, as the

Bankruptcy Judge overseeing the bankruptcy case for more than a year noted, the relationship

between LeClairRyan and Defendants has been "front and center since the first day of the

Bankruptcy Case."  (Bankr. Rec. at 12.)  Accordingly, *In re Systems Engineering & Energy

Management Associates* offers little support for Defendants' position.

Defendants consistently point out that only ULXP has filed a proof of claim and,

therefore, the Court cannot find that any of the Trustee's claims against UnitedLex are core.

This argument ignores the Trustee's alter ego claim in Count XIV and the allegations throughout

the Complaint — including in each Count against UnitedLex — that UnitedLex acted as an alter

ego of ULXP.  Indeed, the Court has previously held that a Virginia state law alter ego claim to

be core.  *Shaia*, 2017 WL 4203544, at *4.  Moreover, a central theme of the Trustee's allegations

involves UnitedLex using ULXP as a vehicle to fraudulently transfer money from LeClairRyan

to UnitedLex.  This makes the Trustee's allegations against UnitedLex intertwined with ULXP's

claims to money in LeClairRyan's bankruptcy estate.  Thus, the claims against UnitedLex, as

pled, also constitute core claims. Because all of the Trustee's claims against Defendants constitute core claims, this factor weighs heavily against withdrawing the reference.

**B.       The Right to a Jury Trial Factor Does Not Weigh In Favor Of Withdrawal.**

Defendants next object to the Bankruptcy Court's finding that they have waived their right to a jury trial on the Trustee's claims. (Def.'s Obj. at 14.) The Bankruptcy Court determined that both Defendants had submitted to the equitable jurisdiction of the Bankruptcy Court by participating in the Bankruptcy Case, thus waiving their rights to a jury trial. Defendants have not yet demanded a jury trial, nor have they expressly waived their rights to a jury trial. The Court agrees with the Bankruptcy Court that this factor does not weigh in favor of withdrawing the reference.

Generally, a bankruptcy court lacks the power to conduct a jury trial and cannot enter final judgments in a case absent the parties' consent to the bankruptcy court's jurisdiction. *Chesapeake Trust*, 2014 202028, at *3. Parties can manifest that consent either expressly or impliedly. *In re Johnson*, 960 F.2d 396, 403 (4th Cir. 1992). The Supreme Court has recognized that "by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." *Lankenkamp v. Culp*, 498 U.S. 42, 44 (1990). This submission occurs, because the trustee's action and the creditor's claim "become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's *equity jurisdiction*." *Id.* Consequently, "there is no Seventh Amendment right to a jury trial." *Id.* at 45.

Here, ULXP has filed two proofs of claim against the estate, thereby submitting to the equity jurisdiction of the Bankruptcy Court. Both ULXP's proofs of claim and the Trustee's claims against ULXP are integral to the restructuring of the debtor-creditor relationship.

17

Accordingly, ULXP has submitted to the Bankruptcy Court's equity jurisdiction, thus weighing against withdrawal.

Likewise, UnitedLex has submitted to the Bankruptcy Court's equitable jurisdiction through its participation in the Bankruptcy Case, even if it has not filed its own proof of claim. The Bankruptcy Court found that UnitedLex "has participated extensively in the administration of the Bankruptcy Cases and been paid administrative expenses under section 503 of the Bankruptcy Code." (Bankr. Rec. at 15.)  Defendants claim that only ULXP has received fees in the administration of the Bankruptcy Case.  However, the Trustee has submitted a declaration disputing this claim.  (Decl. of Lynn L. Tavenner, Trustee, In Supp. of Trustee's Resp. to Def.'s Obj. to the Bankr. Court's Prop. Findings of Fact and Concl. of Law ("Trustee Decl.") (ECF No. 12 at 22-24).)  In her Declaration, the Trustee testifies that, although ULXP employees previously assisted in the wind-down of the estate, in December 2019, ULXP asked if its employees could become employees of UnitedLex.  (Trustee Decl. ¶ 5.)  Thereafter, the Trustee communicated with managers at UnitedLex who provided a weekly UnitedLex roster of employees who would assist.  (Trustee Decl. ¶ 6.)  The estate received invoices from an individual who held herself out as a manager of UnitedLex.  (Trustee Decl. ¶ 6.)  The invoices had the UnitedLex logo in the upper left corner and the UnitedLex website and contact information.  (Trustee Decl. ¶ 6.)  The Trustee paid all invoices and believed that the estate was paying UnitedLex for services rendered by UnitedLex and its employees.  (Trustee Decl. ¶¶ 6, 9.)

Defendants attempt to explain this away in a footnote by stating that ULXP transferred its employees to UnitedLex in December of 2019 and then those UnitedLex employees provided services to ULXP for the benefit of Debtor.  (Def.'s Obj. at 3, n.4.)  Defendants purportedly took

this step to avoid having to pay a separate payroll fee for ULXP employees. (Def.'s Obj. at 3, n.4.) Regardless of the reason for taking these steps[2], the record before the Court reveals that UnitedLex employees assisted in the wind-down of the estate, UnitedLex managers communicated with the Trustee regarding those services and payment for those services, and invoices for those services appeared to come from UnitedLex. Even accepting Defendants' pass-through theory that UnitedLex only provided services to ULXP, who then provided the services to LeClairRyan, the crux of the Trustee's allegations against UnitedLex is that they acted as ULXP, rather than independently of ULXP, further supporting the claim that UnitedLex participated in the Bankruptcy Case as ULXP's alter ego. Thus, the Court agrees with the Bankruptcy Court that UnitedLex has substantially participated in the Bankruptcy Case, thereby limiting the weight given to any potential right to a jury trial that it may have. *See In re Sunshine Trading & Transp. Co., Inc.* 193 B.R. 752, 756 (Bankr. E.D. Va. 1995) (finding that a party can waive its right to a jury trial in ways other than filing a proof of claim).

Likewise, Defendants' argument regarding the discrepancy in the amounts sought fails. Defendants argue that, because the Trustee's state law claims seek $129 million from Defendants and ULXP has filed proofs of claim in the amount of $12 million, the Court should find that the damages claims predominate to the extent of obviating the waiver of the jury trial. (Def.'s Obj. at 17.) However, the Court need not engage in such a counting exercise. All of the money that the Trustee seeks to recover has a basis in the same dealings and transactions that will be at issue in resolving the proofs of claim. And, the difference in the amounts stems largely from the fact that the Trustee seeks treble damages on Count X, rather than a large difference in the total amount of money at issue in the challenged transactions.

---

[2]      If anything, Defendants' explanation for the ambiguity of who actually rendered the services only strengthens the Trustee's claims that UnitedLex acted as a alter ego of ULXP.

Moreover, Defendants have not yet demanded a jury trial.  But even if Defendants had requested a jury trial, that does not require immediate withdrawal of the reference.  As the Court has previously stated,

> the mere fact that the district court must conduct a jury trial in an adversary proceeding "does not mean that the bankruptcy court immediately loses jurisdiction of the entire matter or that the district court cannot delegate to the bankruptcy court the responsibility for supervising discovery, conducting pre-trial conferences, and other matters short of jury selection and trial."

*In re QSM, LLC*, 453 B.R. 807, 810 (E.D. Va. 2011) (quoting *In re Stansbury Poplar Place, Inc.*, 13 F.3d 122, 128 (4th Cir. 1993)).  Accordingly, Defendants have not established that any rights that they have to a jury trial weigh in favor of withdrawing the reference.

### C.     The Remaining Factors Do Not Weigh In Favor of a Jury Trial.

Defendants further object to the Bankruptcy Court's findings that the following factors weigh against withdrawal:  (i) uniform administration of bankruptcy proceedings, (ii) expediting the bankruptcy process and promoting judicial economy, and (iii) efficient use of the debtors' and creditors' resources.  (Def.'s Obj. at 20.)  However, its objection relies on its arguments that some of these matters constitute non-core matters and that Defendants have a right to a jury trial on several of these matters, thus requiring a separate trial in the district court on some claims but not others.  Having already rejected Defendants' arguments that the core/non-core and jury trial factors weigh in favor of withdrawal, Defendants' arguments as to these factors crumble.

Indeed, these three factors weigh strongly against withdrawal.  As it noted, the Bankruptcy Court "became acutely aware of and familiar with Debtor's business, including the transactions at issue in this Adversary Proceeding." (Bankr. Rec. at 12.)  It conducted an evidentiary hearing on the Trustee's Cash Collateral Motion, which implicated the very dealings and transactions at issue here.  (Bankr. Rec. at 12.)  Although Defendants argue that the Bankruptcy Court has not yet acquired a heightened familiarity with the details of these disputes,

20

because the two-day evidentiary hearing did not actually span two full days (Def.'s Obj. at 21),

the Court accepts the Bankruptcy Court's characterization of its own familiarity with the case.

Moreover, the Bankruptcy Court has adopted standardized procedures for managing the

Bankruptcy Case and litigating adversary claims.  (Bankr. Rec. at 13.)  In short, the Bankruptcy

Court has already streamlined the Bankruptcy Case.  Withdrawing the reference and waiting for

the district court to conduct a trial on the Adversary Proceedings would disrupt these streamlined

procedures, delay the bankruptcy process and undermine judicial economy.  This, in turn, would

waste Debtor's, creditors' and judicial resources.  *See Arrowsmith v. Mallory (In re Health*

*Diagnostics Lab'y, Inc.)*, 2017 WL 3084626, at \*4 (E.D. Va. July 19, 2017) (declining to

withdraw the reference where withdrawal "would result in a waste of judicial resources and

would further complicate this already complex litigation").  Accordingly, these three factors

weigh against withdrawing the reference.

Additionally, the forum shopping factor does not weigh in favor of withdrawing the

reference.  The Bankruptcy Court found that "the opportunity for forum shopping presents as a

concern in this case," because the Bankruptcy Court had already ruled against Defendants on the

Cash Collateral Motion.  The Court agrees, though it gives little weight to this factor.  The

Bankruptcy Court has made no substantive rulings on the Trustee's claims, diminishing the

weight given to this factor.  However, the one ruling that the Bankruptcy Court made with

respect to some of the similar issues went against Defendants, suggesting that perhaps they seek

a friendlier venue to hear similar issues.  At best for Defendants, this factor is neutral.  Certainly,

it does not weigh in favor of withdrawing the reference.

## IV.    CONCLUSION

Defendants bear the burden of demonstrating the appropriateness of the withdrawal.

After reviewing the record, the parties' submissions, the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law and Defendants' objections thereto, the Court agrees with the Bankruptcy Court's recommendation that Defendants have not met their burden and the reference in this action should remain undisturbed.  Accordingly, Defendants' Motion to Withdraw the Reference (ECF No. 2) is hereby DENIED.

      An appropriate Order shall issue.

      Let the Clerk file a copy of this Order electronically, notify all counsel of record and forward a copy to United States Bankruptcy Judge Kevin R. Huennekens.

                            _____/s/_____
                            David J. Novak
                            United States District Judge

Richmond, Virginia
Dated:  May 28, 2021

22